IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Kenneth D Sipple, | ) | Civil Action No  8:15-cv-01961-MBS-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

On December 30, 2011, Plaintiff filed an application for DIB,[2] alleging disability beginning October 10, 2010.[3]  [R. 153–59.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 100--26.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Plaintiff previously filed an application for DIB on April 9, 2010.  [R. 151–52.

[3]On June 19, 2013, Plaintiff, through his attorney, amended the alleged onset date to January 20, 2011.  [R. 178.]

Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on December 3, 2013, ALJ Harold Chambers conducted a hearing on Plaintiff's claim. [R. 29–75.]

The ALJ issued a decision on February 28, 2014, finding Plaintiff not disabled. [R. 8–28.] At Step 1,[4] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on March 31, 2011, and had not engaged in substantial gainful activity during the period from his alleged onset date of January 20, 2011 through his date last insured of March 31, 2011. [R. 13, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: epilepsy, multiple sclerosis, degenerative disc disease, failed back syndrome, a labral tear, chronic obstructive pulmonary disease (COPD), rotator cuff syndrome, bicipital tendonitis, a seizure disorder, a panic disorder, and a mood disorder. [R. 13, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift 15-to-20 pounds occasionally, lift or carry up to 10 pounds frequently, is limited to standing and walking 4-5 hours in an 8-hour day, and can sit for approximately 6 hours per 8 hour workday. He is limited to frequent pushing/pulling bilaterally (upper extremities), frequent operation of foot controls bilaterally (lower extremities), no

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

climbing of ropes, occasional climbing of ladders or scaffolds, occasional climbing of ramps and stairs, frequent balancing, occasional stooping, kneeling, and crawling, no crouching, frequent handling objects (gross manipulation), bilaterally, frequent fingering (fine manipulation, items no smaller than the size of a paper clip) bilaterally, must avoid concentrated exposure to excessive vibration, avoid even moderate exposure to environmental irritants (e.g., fumes, odors, dusts, gases), poorly ventilated areas, or exposure to chemicals; must avoid even moderate exposure to hazards (such as use of moving machinery and unprotected heights); and is limited to occupations which do not involve exposure to direct sunlight or working beneath bright flashing lights.  The claimant is further limited to simple, routine, repetitive tasks and work where there is no fast paced or production rate work.  He is limited to only occasional interaction with the general public and co-workers (although he can be around co-workers throughout the workday).

[R. 16, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a painter.  [R. 18, Finding 6].  However, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. [R. 19, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from January 20, 2011, the alleged onset date, through March 31, 2011, the date last insured.  [R. 20, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined.  [R. 1–6. ]  Plaintiff filed this action for judicial review on May 8, 2015.   [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends there is overwhelming evidence in the record showing that he was disabled before March 31, 2011.  [Doc. 34.]   The Commissioner, on the other hand,

3

contends the ALJ's decision is supported by substantial evidence and free form harmful legal error.  [Doc. 35.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning"

6

because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health*

*& Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact.  *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit,

9

whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §

13

404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v.*

14

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must

consider all of a claimant's statements about his symptoms, including pain, and determine

the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected

a rule which would require the claimant to demonstrate objective evidence of the pain itself,

*Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to

promulgate and distribute to all administrative law judges within the circuit a policy stating

Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d

329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy

Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II and
> XVI: Evaluation of Pain and Other Symptoms:
> >                             ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the functional
> effects of pain such as deteriorating nerve or muscle tissue,
> muscle spasm, or sensory or motor disruption), if available,
> should be obtained and considered.  Because pain is not readily
> susceptible of objective proof, however, the absence of

16

> objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

### APPLICATION AND ANALYSIS

In evaluating Plaintiff's mental impairments under the criteria of Listings 12.04 and 12.06, the ALJ found Plaintiff had moderate difficulties in concentration, persistence, and pace.  [R. 15.]  In *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015),[8] the Fourth Circuit Court of Appeals found it reversible error that the ALJ did not explain his consideration of Plaintiff's limitations in concentration, persistence, or pace in the claimant's RFC or present the limitation to the VE in a hypothetical, opining,

> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity.  For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

*Mascio*, 780 F.3d at 638 (internal citation omitted).  Following *Mascio*, several cases in this district and in other districts within the Fourth Circuit have found a limitation to simple, unskilled work is insufficient to address moderate limitations in concentration, persistence, and pace absent further explanation.  *See Herren v. Colvin*, No. 1:15-cv-00002-MOC, 2015

---

[8]In *Mascio*, the claimant asserted that the ALJ presented a legally insufficient hypothetical to the VE because it failed to include the claimant's mental limitations.  780 F.3d at 637.  The ALJ found the claimant had an adjustment disorder and also that she had moderate difficulties with concentration, persistence, or pace as a side effect of her pain medication.  *Id.* at 638.  However, the ALJ did not include anything about the claimant's mental limitations in the hypothetical to the VE.  *Id.* at 637.  The court agreed with other circuits that have held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,'" *id.* at 638 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that the Eleventh Circuit joined the Third, Seventh, and Eighth Circuits)), and remanded the case because the ALJ gave no explanation as to why the claimant's moderate limitation in concentration, persistence, or pace did not translate into a limitation in her RFC, *id.*

18

WL 5725903, at *6 (W.D.N.C. Sept. 30, 2015) (finding a hypothetical containing a restriction to "simple, routine, repetitive tasks" failed to address the claimant's ability to stay on task); *Desilets v. Colvin*, No. 2:14-cv-1693-RBH, 2015 WL 5691514, at *4–5 (D.S.C. Sept. 28, 2015) (finding a limitation in the RFC to "simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting in crediting some of her complaints of increased mental symptoms with stress" did not "sufficiently address the claimant's limitations in concentration, persistence, or pace as they relate to the RFC"); *Jones v. Colvin*, No. 4:14-cv-200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) ("[T]he hypothetical question to the VE contemplated an individual 'limited to simple, routine, repetitive tasks; should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations.'  The majority of courts in North Carolina, including this court, have held that such restrictions do not adequately address a claimant's moderate limitations in concentration, persistence and pace."); *Bailey v. Colvin*, No. 5:14-cv-248-DCN, 2015 WL 2449044, at *13 (D.S.C. May 21, 2015) (finding a limitation in the RFC to "only simple, routine, repetitive tasks; he must work in a static work environment (which I define as an environment with few work place changes)" did not account for the claimant's "limitations in concentration, persistence, or pace as to his ability to *stay on task*") (emphasis in original); *Scruggs v. Colvin*, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence, and pace); *Cf. Falls v. Colvin*, 8:14-cv-00195-RBH, 2015 WL 5797751, at *7 (D.S.C. Sept. 29, 2015) (finding remand was not required because the ALJ adequately addressed claimant's ability

to stay on task by including the limitation "she could concentrate, persist, and work at pace to do simple, routine, repetitive tasks at one and two step instructions for extended periods, say two hour periods in an eight hour day").

In this case, the ALJ merely adopted the limitations of the state agency examiner without explaining how a limitation to simple work accommodates Plaintiff's mental limitations. As in *Mascio*, the ALJ's hypothetical to the VE in this case did not mention Plaintiff's mental limitations and merely limited Plaintiff to simple, routine, and repetitive tasks with no fast paced production or rate work. [R. 70.] After *Mascio*, further explanation and/or consideration is necessary regarding how Plaintiff's moderate limitation in concentration, persistence, or pace does or does not translate into a limitation in his RFC. Accordingly, this case should be remanded for the ALJ to further consider Plaintiff's

limitations in concentration, persistence, and pace as they relate to the RFC[9] and include

such limitations in the hypothetical to the VE.[10]

---

[9]Additionally, it is unclear whether the ALJ considered all evidence of record in assessing Plaintiff's RFC.  For instance, it remains unclear how the ALJ weighed the evidence from Plaintiff's ex-wife or Plaintiff's own hearing testimony.  Plaintiff's ex-wife described Plaintiff's difficulties with dressing, standing for long periods of time, poor memory, incontinence problems, remembering to groom and take medicine, and his inability to afford needed treatment. [R. 235–39, (Function Report, Adult-Third Party).] Plaintiff testified he is in constant pain 24 hours a day and that the pain makes him go crazy. [R. 35.] Plaintiff also testified that, as a result of his brain lesions, he has problems remembering dates, phone numbers, times, appointments, and that he must rely on his wife to manage his funds. [R. 39.] Plaintiff testified that, during his multiple sclerosis flare-ups, which typically last about two months,  he needs someone to help him with everyday things. [R. 52–53.]  He also testified that he has a fecal incontinence problem and that, if his multiple sclerosis flares up, he will be in the bathroom 3-4 times in an hour.  [R. 60.] Plaintiff indicated that he has experienced times when he was afraid to leave the house for periods of as long as a month and that, when he gets really depressed, he just stays in bed. [R. 55.]  The ALJ provided very little discussion, if any, of the evidence provided by Plaintiff's ex-wife and/or Plaintiff's testimony regarding his limitations. *See Morgan v. Barnhart*, 142 F. App'x 716, 720 (4th Cir. 2005) ("[T]he ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members.") (citing 20 C.F.R. § 404.1529(c)(3)).

Further, during the Administration's reconsideration of Plaintiff's claim, agency examiner Dr. Harold Veits determined that Plaintiff's attention and concentration were adequate for two-hour periods in an eight-hour day and that he could sustain adequate concentration and persistence if given a flexible schedule and all allowable breaks. [R. 121.]  When the ALJ asked the VE about what is customarily expected by employers in terms of absences and routine rest or break periods, the VE testified that absences per month for unskilled work is one day per month, possibly two. [R. 71.]  On a daily basis, breaks should consist of 15 minutes in the morning and afternoon, 30 minutes for lunch, and one or two short bathroom or smoke breaks. [*Id.*]  According to the VE's testimony, if an individual's limitations will cause them to exceed those limits, either as to the absences or routine rest or break periods daily, all competitive work would be eliminated. [*Id.*]  Thus, before deciding the issue of disability, it is critical to the ALJ's decision that he address Plaintiff's need for breaks, his likely absences from work due to his limitations, and his ability to persist or ability to stay on task.

[10]On remand, the ALJ should also be directed to provide an explanation of his consideration of the listings at issue in this case.  While the ALJ indicated that Plaintiff suffers from severe impairments of epilepsy, multiple sclerosis, degenerative disc disease, failed back syndrome, a labral tear, chronic obstructive pulmonary disease (COPD), rotator cuff syndrome, bicipital tendonitis, a seizure disorder, a panic disorder, and a mood

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2016
Greenville, South Carolina

---

disorder, the only impairments apparently evaluated by the ALJ at Step 3 are those that qualify under Listings 1.02, 1.04, 12.04, and 12.06. [R. 14–16.] Although the ALJ found Plaintiff's epilepsy and multiple sclerosis to be severe impairments, he did not evaluate them to determine whether they meet listing severity; further, there is no indication that the ALJ considered the combined effect of all of Plaintiff's impairments in making his listing analysis or RFC determination. Indeed, although the ALJ found Plaintiff's multiple sclerosis to be severe, he never mentioned the impairment after step 2 of the evaluation process. The ALJ's decision effectively leaves the Court to guess as to how the ALJ arrived at his findings regarding Plaintiff's ability to meet listing level severity in light of his combined impairments; and, also leaves the Court to guess as to what limitations associated with multiple sclerosis necessarily accommodated in the RFC.

Further, although Plaintiff's multiple sclerosis diagnosis may have come after his date last insured [*see* R. 129 (multiple sclerosis diagnosis made in June 2012)], his symptoms correlating to "demyelinating process" [*see, e.g.*, R. 318] were in the record as early as February 2007, prior to his date last insured. Plaintiff's MRI findings in April 2012 noted Plaintiff's diagnosis of demyelinating disease of the central nervous system remained unchanged since the February 2007 study, that potential new white matter lesions in the Pons may demonstrate mild enhancement, and that a demyelinating disease such as multiple sclerosis could account for these abnormalities. [R. 472–73.] In any instance, the ALJ failed to explain whether he found Plaintiff's multiple sclerosis was present during the relevant time and/or whether symptoms after the relevant time period related back. Consequently, the Court cannot find that the ALJ's decision is supported by substantial evidence.